IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KASKASKIA ENGINEERING GROUP, LLC | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:16-cv-905 ) |
| TODD REYLING<br>Serve at:<br>    4516 Boardwalk<br>    Smithton, Illinois  62285 | ) ) ) ) ) |
| and | ) **JURY TRIAL DEMANDED** ) ) |
| REYLING DESIGN AND CONSULTING, LLC<br>Serve at:<br>    4516 Boardwalk<br>    Smithton, Illinois  62285 | ) ) ) ) ) ) |
| Defendants. | ) ) |

## VERIFIED COMPLAINT

Plaintiff Kaskaskia Engineering Group, LLC ("KEG"), brings this action against Defendants Todd Reyling ("Reyling") and Reyling Design and Consulting, LLC ("Reyling Design") for violation of the Computer Fraud and Abuse Act, breach of Illinois Trade Secrets Act, breach of duty of loyalty, tortious interference with contract or business expectancy, and violation of the Illinois Uniform Deceptive Trade Practices Act.  In support thereof, KEG states as follows:

### NATURE OF CASE

1. This is an action based on violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq*. ("CFAA"), the Illinois Trade Secrets Act, continued breach of duty of loyalty to KEG, intentionally and tortiously interfering with KEG's contract or business

1

expectancies, and violations of the Illinois Uniform Deceptive Trade Practices Act, to seek judgment against Reyling and Reyling Design, an award of compensatory damages in an amount to be proven, as well as punitive damages, to enjoin Reyling and Reyling Design from intentionally violating the law and prevent further violations of law, and prejudgment interest, costs, and attorneys' fees.

2. Defendant Reyling was previously employed as a Program Manager/Project Manager by Plaintiff KEG from April 14, 2010 through May 19, 2016 when he voluntarily resigned his employment with KEG.

3. As Program Manager, Reyling's duties and responsibilities included without limitation: cultivate new business relationships on behalf of KEG and maintain positive relationships with existing clients; manage all land development, local road and construction projects; manage and assist other Program Managers with their projects and budgets; participate as part of the financial team to track financials and budgets; and ensure projects are financially viable.

4. As Project Manager, Reyling's duties and responsibilities included without limitation: maintain principle contact with client on each project; meet utilization rate goals; meet deadlines and budgets; understand project scope, schedule and budget and identify to management any concerns that may require attention (even during the proposal stage); document scope changes and needed revisions to any project contract or proposal; review charges to each project on a weekly basis; practice risk management; ensure projects follow Quality Assurance/Quality Control processes; build and maintain client relations; ensure overall project quality; assist principals of the company in development of services and marketing; follow all KEG policies and procedures, including saving all work related files and emails to SharePoint,

using SharePoint company calendars, and other SharePoint materials; and create new projects in Vision software and manage projects with SharePoint software.

5. Through his employment with KEG, Reyling learned of and helped develop KEG's confidential and proprietary information, including without limitation but by way of example, information concerning pricing agreements, policies, prospective designs for projects, customer bids, feasibility studies for proposed projects and design capabilities for KEG's clients and prospective customers, information concerning KEG's clients' and prospective customers' particular needs, preferences and requirements (and how KEG uses such information to maintain a competitive advantage), marketing plans, business strategies, financial information, labor costs and profit margins.

6. This information constitutes "trade secrets" under Illinois law. This information is not known outside of KEG, and KEG derives a competitive advantage by keeping this information confidential. KEG takes reasonable steps to safeguard the confidentiality of this information by restricting access to only those employees who require the information to perform their job duties.

7. Before, Reyling voluntarily resigned from his employment with KEG, Reyling began his own business, Defendant Reyling Design, a Missouri professional design firm and which is directly competing with KEG in the geographic areas of Illinois, Missouri, Indiana and other states.

8. As set forth *infra*, Reyling and/or Reyling Design have violated the Illinois Trade Secrets Act by using and/or inevitably using or disclosing KEG's trade secret information to compete with KEG, Reyling Design has breached his duty of loyalty to KEG and tortiously interfered with KEG's contract or business expectancies by directly competing with KEG prior

to his resignation by soliciting and/or actually inducing KEG's existing clients to sever contracts or cease doing business with KEG in order to do business with his new company. Reyling Design, violated the Computer Fraud and Abuse Act under federal law through the unauthorized access of KEG's computer databases and files, and violated the Illinois Uniform Deceptive Trade Practices Act by taking actions which created a likelihood of confusion or misunderstanding as to the nature of his products and services.

## PARTIES

9. KEG is a limited liability company organized under the laws of the State of Illinois with its principal place of business at 208 East Main Street, Suite 100, Belleville, Illinois.

10. Reyling is a citizen of the State of Illinois residing at 4516 Boardwalk in Smithton, Illinois 62285.

11. Defendant Reyling Design and Consulting, LLC is a limited liability company organized under the laws of the State of Missouri, with its principal place of business at 4516 Boardwalk, Smithton, Illinois, and its registered agent Mark McColl, 12747 Olive Blvd., Suite 300, St. Louis, Missouri 63141.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the parties in this action pursuant to 28 U.S.C. § 1331 as it is a civil action arising under the laws of the United States, specifically the CFAA, 18 U.S.C. §§ 1030, *et seq*.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) as a substantial portion of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

14. KEG is a 100% woman-owned full service civil engineering, environmental and contracting firm, providing service to and contracting with the federal government, various state, county and city units of government and private developers throughout the Midwest with its headquarters in Belleville, Illinois and maintains branch offices in Peoria, Glen Carbon, Macomb and Champaign, Illinois as well as Ste. Genevieve, Missouri; Evansville, Indiana and St. Paul Minnesota, and currently employs approximately 33 employees.

15. KEG has conducted business in the following States since its inception in 2006: Illinois, Missouri, Indiana, Iowa, Oklahoma, Kentucky, Minnesota, Wisconsin, North Dakota and Michigan.

16. KEG does business by establishing contacts with businesses and governmental units soliciting bids for projects from companies such as KEG.

17. In the process of establishing such contacts, Reyling was exposed to project sites, customers and prospective customer expectations, and layouts, conceptual designs and plans, projections, architectural plans, proposals and drawings developed specifically for a customer or prospective customer by key KEG designers and engineers and through KEG teaming partners.

18. This information is highly confidential and any release or unauthorized use of this proprietary and confidential information to competitors would directly harm KEG.

19. Should a competing Company gain access to KEG's confidential and proprietary information and trade secrets described above that information can be used to underbid KEG.

20. Because of this very competitive environment, information regarding KEG's confidential and proprietary information developed for bidding a prospective customer's project can give a competitor an unfair advantage in the process.

21. This information is not known to persons outside of KEG and could only be learned, if at all, through the expenditure of considerable time, effort and expense.

22. The confidential nature of this information provides KEG a competitive advantage in the industries in which KEG competes.

23. Accordingly, KEG restricts access to such information to those employees who need to know in order to perform their job functions.

24. While Reyling was Program Manager/Project Manager, he became intimately acquainted with KEG's customers and prospective customers, their needs, preferences and proposed projects. He personally oversaw the development of concepts, designs, drawings, plans and the like for projects, often times running up extraordinary costs in the development of project proposals, as a result of Reyling's conduct in this regard in the last year of his employment, KEG was unsuccessful in the bidding process on many projects for which Reyling was responsible and/or supervised.

25. On May 19, 2016, Reyling resigned from his position as Program Manager/Project Manager with KEG.

26. Subsequently, KEG discovered that during his employment with KEG, Reyling had accessed and deleted certain files in the Company computer system relating to various projects and proposals in the first quarter of 2016, specifically

   a. E.J. Equipment – two (2) received folders containing seven (7) files, seven (7) sent folders containing eighteen (18) files, the CADD drawings folder, containing forty-three (43) files and the Surveying folder which contained two (2) files;

    b. Planet Fitness, Sunset Hills – one (1) sent folder containing three (3) files and one (1) file in the main proposal folder;

    c. Planet Fitness, South County Center – the "Starbucks" file with the CADD drawings folder containing three (3) files and the "Starbucks.dwg" in the main folder;

    d. Hayden Properties – one (1) correspondence folder containing twenty-one (21) items and the CADD drawings folder which contained five (5) files;

    e. Belleville Multisport Complex – one received folder containing three (3) files and one (1) sent folder containing two (2) files;

27. Reyling's access and deletion of the aforementioned files was entirely without KEG's authorization.

28. Upon investigation KEG has learned that Reyling engaged in the following conduct while still in the employ of KEG:

    a. On February 21, 2016, Reyling forwarded an email from the Small Business Administration (SBA) to his personal email address golfboardwalk@yahoo.com entitled "Thinking of starting a business? We have resources to help…"

    b. On February 29, 2016, Reyling forwards three (3) scanned documents to his personal email address, golfboardwalk@yahoo.com, entitled "Design criteria – improvements at the Weingarten", "The Vision Group LLC" and "Orison and Fern Seibert Property House and Pasture Tract December 19, 2001."

    c. On March 12, 2016, Reyling tells a potential client, Beau Reinberg, that he is thinking about "going out on his own."

7

d. On March 16, 2016, Reyling receives notice to his KEG email address to proceed on the civil engineering for a project with E.J. Equipment.

e. On March 17, 2016, Reyling sends text of an email from E.J. Equipment to his wife's email address – tcreyling@yahoo.com.

f. On March 20, 2016, Reyling sends "EJ EQUIPMENT_LEGALDESCRIPTION.pdf" to his personal email address golfboardwalk@yahoo.com.

g. On March 22, 2016, Reyling sent "Kaskaskia _IL162-I55_3-22-16.pdf" to his personal email address golfboardwalk@yahoo.com. This document is a survey control transmittal form for E.J. Equipment.

h. On March 24, 2016, Reyling Design and Consulting, LLC, Articles of Organization as a Missouri Limited Liability Company are filed.

i. On March 27, 2016, Reyling orders NCEES Records Transmittal and forwards the receipt to his personal email address golfboardwalk@yahoo.com.

j. On April 4, 2016, Reyling sent a proposal on behalf of KEG to Hayden Construction on the 161 Apartment project with an estimated cost of $110,500.00. Simultaneously, Reyling also saved a cost estimate for the same project on his desktop with his initial behind the file name with an estimated cost of the project for $77,480.00, which was never submitted as a KEG proposal.

k. On April 11, 2016, Reyling sends E.J. Equipment "C1 siteplan.pdf" and "SB future addition thru" to personal email address golfboardwalk@yahoo.com.

    l. On April 25, 2016, Reyling Design and Consulting, LLC is registered with the Missouri Division of Professional Registration.

    m. On May 6, 2016, Reyling Design and Consulting, LLC files to do business in the State of Illinois as a foreign company.

  29. On May 23-27, 2016 data in the KEG computer system is discovered missing.

  30. It is apparent that Reyling has planned to leave KEG and began his competing business for many months prior to his resignation. Consequently, KEG hired IT and forensic professionals to determine what computer files and information Reyling had downloaded and/or deleted from KEG's computers and databases and to restore and verify the integrity pf all of KEG's valuable electronically stored data.

  31. KEG did not authorize Reyling to download, upload or otherwise preserve access or delete any of KEG's computer files or documents or those related to KEG's business to be maintained after his employment or used for any purpose other than through his employment with KEG. Any action by Reyling to access, download, upload, delete or otherwise maintain the aforementioned KEG computer files and documents was beyond that required of his employment with KEG and he did so without authorization and/or by exceeding the authorization granted to him.

  32. In addition to downloading and taking confidential and proprietary computer files and documents related to KEG's business operations, KEG discovered Reyling had taken additional steps to secure his own business many months prior to his resignation despite the appearance of soliciting business on behalf of KEG and presenting proposals to various customer and prospective customers of KEG during that same timeframe.

33. Furthermore, KEG has learned that subsequent to Reyling's resignation he has submitted proposals to at least two (2) prospective customers: Hayden Properties on the 161 Apartment project (see ¶26; *supra*) and Poettker Construction, E.J. Equipment, Troy, Illinois project at a substantially lower bid than the bid he submitted on behalf of KEG as well as others to be determined in discovery.

## **COUNT I**

## **VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 USCA § 1030** *et seq*

34. KEG hereby realleges and incorporates the allegations set forth in paragraphs 1 through 30 above as through specifically set forth herein.

35. KEG maintains computers, hard drives, email servers and network used to conduct interstate communications and commerce which are protected computers within the meaning of the Computer Fraud and Abuse Act. 18 USCA § 1030 *et seq*.

36. On or about May 23-27, 2016, KEG became aware that, based upon information and belief, that in the first calendar quarter of 2016 and thereafter until his resignation from employment with KEG, Reyling, had intentionally and without authorization or authority, deleted KEG computer files from KEG servers and accessed the stored electronic information and communications stored on KEG's servers.

37. Reyling's conduct intentionally and recklessly caused damage and loss to KEG.

38. To date, KEG has expended in excess of $5,000 to investigate and respond to Reyling's offenses and unauthorized access to KEG's computers, hard drives, email servers and network, including the engagement of IT professionals to conduct an investigation of the unauthorized activity by Reyling and to repair KEG's computer system as well as the restoration of deleted or misappropriated data.

WHEREFORE, KEG requests this Court grant appropriate temporary, preliminary and permanent injunctive relief; enter judgment against Reyling; award compensatory damages in an amount to be proven, as well as punitive damages; award KEG prejudgment interest, costs, and attorneys' fees; and grant such further relief that the Court may deem just and proper.

### COUNT II

### BREACH OF ILLINOIS TRADE SECRETS ACT, 764 ILCS 1065/1 et seq

39. KEG hereby realleges and incorporates the allegations set forth in paragraphs 1 through 35 above as through specifically set forth herein.

40. This is an action against Reyling and Reyling Design pursuant to the Illinois Trade Secrets Act, 764 ILCS 1065/1 *et seq.*

41. Upon information and belief, while working for KEG, Reyling gained access to KEG's confidential and proprietary information and trade secrets.

42. KEG derives independent economic value, actual or potential, from those trade secrets not being generally known to, and not being readily accessible by proper means by, other persons who can obtain economic value from their disclosure or use.

43. KEG took reasonable efforts to maintain the secrecy of its trade secrets.

44. Upon information and belief, Reyling has misappropriated without authorization, and/or used or disclosed, and/or inevitably will use or disclose, KEG's trade secrets, which he wrongfully obtained and retained by downloading such information prior to the termination of his employment relationship with KEG.

45. Reyling has acted without KEG's consent, and knew or had reason to know that his knowledge of such trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy.

46. Reyling's actual misappropriation of KEG's trade secrets is outrageous because of Reyling's evil motive or reckless indifference to KEG's rights.

47. Reyling's actions and omissions as alleged herein have directly and proximately cause KEG to suffer damages and irreparable harm in the loss of customer contracts, loss of prospective customers, loss of business goodwill, loss of competitive advantage and loss of business.

48. All conditions precedent to the maintenance of this action have been satisfied or waived.

WHEREFORE, KEG requests this Court grant appropriate temporary, preliminary and permanent injunctive relief; enter judgment against Reyling; award compensatory damages in an amount to be proven, as well as punitive damages; award KEG prejudgment interest, costs, and attorneys' fees; and grant such further relief that the Court may deem just and proper.

## COUNT III

## BREACH OF DUTY OF LOYALTY

49. KEG hereby realleges and incorporates the allegations set forth in paragraphs 1 through 82 above as though specifically set forth herein.

50. As an employee of KEG, Reyling owed KEG a duty of loyalty.

51. Reyling violated this duty of loyalty by a variety of actions while still in the employ of KEG, including, without limitation:

    a. Downloading and/or emailing to his personal email or personal business email confidential and trade secret information belonging to KEG while still employed with KEG;

    b. Retaining confidential and trade secret information belonging to KEG after the termination of the employment relationship;

    c.    Using KEG's confidential and trade secret information to compete with KEG;

    d.    Establishing a competing business, specifically Reyling Design and Consulting, LLC while still in the employ of KEG;

    e.    Attempting to induce and/or actually inducing KEG's clients to sever their relationship with KEG while still in the employ of KEG;

    f.    Negotiating contracts with KEG's customers to conduct business in direct competition with KEG before and after the termination of the employment relationship using misappropriated KEG confidential and proprietary information and trade secrets.

52.    Reyling's conduct caused KEG damages in an amount to be proven at trial.

53.    Reyling's conduct was outrageous because of his evil motive or reckless indifference to KEG's rights.

WHEREFORE, KEG requests this Court grant appropriate temporary, preliminary and permanent injunctive relief; enter judgment against Reyling; award compensatory damages in an amount to be proven, as well as punitive damages; award KEG prejudgment interest, costs, and attorneys' fees; and grant such further relief that the Court may deem just and proper.

## COUNT IV

### TORTIOUS INTERFERENCE WITH CONTRACT OR BUSINESS EXPECTANCY

54.    KEG hereby realleges and incorporates the allegations set forth in paragraphs 1 through 50 above as though specifically set forth herein.

55.    KEG had contracts with, or valid business expectancies from, customers and prospective customers whom Reyling called upon when he was employed by KEG, including,

but not limited to, Hayden Properties, Poettker Construction Company, Oak Tree Management Services, Inc., DMS Contracting, Inc. and Missionary Ventures LLC.

56. Reyling had knowledge of KEG's contracts and/or business expectancies with these businesses.

57. While employed with KEG and after termination of the employment relationship, Reyling and Reyling Design intentionally and without legal justification interfered with those contracts and/or business expectancies by inducing or causing those businesses to breach or forego entering into contracts with KEG.

58. There is no justification for Reyling's and Reyling Design's conduct.

59. Reyling's and Reyling Design's conduct caused KEG damages.

60. Reyling's and Reyling Design's conduct was outrageous because of their evil motive or reckless indifference to KEG's rights.

WHEREFORE, KEG requests this Court grant appropriate temporary, preliminary and permanent injunctive relief; enter judgment against Reyling and Reyling Design; award compensatory damages in an amount to be proven, as well as punitive damages; award KEG prejudgment interest, costs, and attorneys' fees; and grant such further relief that the Court may deem just and proper.

## COUNT V
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

61. KEG hereby realleges and incorporates the allegations set forth in paragraphs 1 through 94 above as though specifically set forth herein.

62. Reyling purposely ran up the cost of KEG proposals for various projects with the motive and intent to submit subsequent lower cost proposals for those same projects on behalf of

his new Company, Reyling Design, using materials developed by KEG in violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, et seq. ("UDTPA").

63. Reyling has also falsely told KEG's customers that KEG is incompetent and is on the verge of going out of business with the intent to cause confusion and misunderstanding.

64. Reyling's actions described above were deliberate and willful.

65. Reyling's actions described above were taken with a design to harm KEG's reputation or business.

66. There is no justification for Reyling's conduct.

67. Reyling's conduct was outrageous because of his evil motive or reckless indifference to KEG's rights.

WHEREFORE, KEG requests this Court grant appropriate temporary, preliminary and permanent injunctive relief; enter judgment against Reyling and Reyling Design; award compensatory damages in an amount to be proven, as well as punitive damages; award KEG prejudgment interest, costs, and attorneys' fees; and grant such further relief that the Court may deem just and proper.

**VERIFICATION**

I, Geri Boyer, pursuant to 28 U.S.C. § 1746, state as follows:

1. I am the owner of Kaskaskia Engineering Group, LLC, Inc. in Belleville, Illinois. I have personal knowledge of the matters alleged in the Verified Complaint through my employment and am competent to testify to all matters stated therein.

2. I have read Kaskaskia Engineering Group, LLC's Verified Complaint and the factual allegations contained therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this \_\_\_\_11\_\_\_\_ day of August, 2016.

_____
Geri E. Boyer. PE

McMAHON BERGER, P.C.


/s/ Michelle M. Cain
Michelle M. Cain, IL06197837
James N. Foster, Jr. (*Pro Hac Vice* Pending)
Kevin J. Lorenz  (*Pro Hac Vice* Pending)
2730 North Ballas Road, Suite 200
P.O. Box 31901
St. Louis, Missouri  63131-3039
(314) 567-7350 – Telephone
(314) 567-5968 – Facsimile

Attorneys for Plaintiff

17